FILED 183
The Honorable Russell G. Brockfeld Room 204 Capitol Building Jefferson City, Missouri 65101
Dear Mr. Brockfeld:
This opinion is in response to your questions asking:
 "1. Does any County Court or county governing body have the statutory right to license or regulate a Solid Waste Disposal Area?
 "2. Does any County Court or any county governing body have the statutory authority to license any person operating a dump for `special' or `hazardous' wastes?"
Your first question relates to the Solid Waste Management Law, Sections 260.200 to 260.245, RSMo Supp. 1975. To implement a statewide solid waste management system the Legislature has provided in Section 260.215.1 that:
 "each county . . . shall provide . . . for the collection and disposal of solid wastes within its boundaries; shall be responsible for implementing their approved plan required by section 260.220 as it relates to the storage, collection, transportation, processing, and disposal of their solid wastes; and may purchase all necessary equipment, acquire all necessary land, build any necessary buildings, incinerators, transfer stations, or other structures, lease or otherwise acquire the right to use land or equipment. Each city and county, may . . . do all other things necessary to provide for a proper and effective solid waste management system; . . ." [Emphasis added.]
Section 260.215.2 further provides that:
 "Any city or county may adopt ordinances, rules, regulations, or standards for the storage, collection, transportation, processing or disposal of solid wastes which shall be in conformity with the rules and regulations adopted by the department for solid waste management systems. However, nothing in sections 260.200 to 260.245 shall usurp the legal right of a city or county from adopting and enforcing local ordinances, rules, regulations, or standards for the storage, collection, transportation, processing, or disposal of solid wastes equal to or more stringent than the rules or regulations adopted by the department pursuant to sections 260.200 to 260.245."
The broad language in the above sections authorizes the county to do all things necessary to provide for an effective solid waste management system. Therefore, in response to your first question, it is our opinion that there is necessarily implied, incident to such power and authority, authority to regulate a solid waste disposal area and to require that a license or permit be obtained by one who desires to engage in the business of collecting, transporting, or disposing of solid wastes. We so held in Opinion Letter No. 12, Boggs, rendered February 3, 1976, a copy of which is attached.
Your second question, which refers to "special" and "hazardous" wastes, relates at present to the Solid Waste Management Law. We must also take note, however, of the Hazardous Waste Management Law, House Bill No. 318, 79th General Assembly, First Regular Session, effective September 28, 1977.
The Solid Waste Management Law contemplates coverage of "special wastes," meaning "solid wastes requiring handling other than that normally used for municipal wastes" (10 CSR 80-2.010 (29)) and "hazardous wastes," meaning "waste materials that are: toxic or poisonous; corrosive; irritating or sensitizing; radioactive; biologically infectious; explosive; or flammable and that present a significant hazard to human health and the environment" (10 CSR 80-2.010 (12)). "Special" and "hazardous" wastes are necessarily included in "Solid Waste", and thus subject to regulation under Sections 260.200 — 260.245. We believe that the reasoning set out in the response to question No. 1 applies to your second question as well. We believe that there is necessarily implied from the broad language of Section 260.215 authority to require that a license be obtained by a person who wishes to operate a dump for "special" or "hazardous" wastes except as hereinafter pointed out.
The Missouri Hazardous Waste Management Law, House Bill 318, 79th General Assembly, First Regular Session, effective September 28, 1977, applies to hazardous waste facilities. Assuming that the "hazardous" waste to which your question refers falls within the types of hazardous wastes sought to be managed in House Bill 318, then the regulation of such wastes is subject to House Bill 318.
Section 17.2 provides that:
 "No action, ordinance or law, with the exception of local option on location, of any county, city, town, village or other political subdivision of this state shall operate to prevent the location or operation of a hazardous waste facility or transporter holding a current hazardous waste facility permit or transporter license issued hereunder within its boundaries."
Section 17.2 of House Bill 318 constitutes a clear legislative statement that local governments cannot regulate the licensing or operation of any facility which falls under the jurisdiction of the Act and for which a permit under the Act has been issued. Whether a county would still retain the authority to regulate that facility under Section 260.215 depends on whether the legislature intended House Bill 318 to supercede the Solid Waste Management Law insofar as a particular facility could be regulated under either law.
Where a statute covers an entire subject matter of prior statutes and manifests a legislative intent that the later act prescribe the law with respect to the entire subject matter, the later act supercedes the earlier laws. Pogue v. Swink, 261 S.W.2d 40
(Mo. 1953). Section 9 and subsections 10.7 through 10.15 of House Bill 318 establish a comprehensive program for the permitting and regulation of hazardous waste facilities. (Disposal sites are included within the term hazardous waste facility, H.B. 318, Section 3(9).) The scope of regulation and the limitations on construction and operation of a hazardous waste facility are considerably more detailed than the provisions in Sections260.205 and 260.210, relating to state permitting and regulation of solid waste disposal areas. For example, requirements for reporting information from hazardous waste facility owners or operators to the Department of Natural Resources are significantly more detailed and rigorous than those applicable to solid waste disposal areas. House Bill 318, Section 9(3)(4)(5) and (6). Demonstration of financial responsibility including, but not limited to, guaranties, liability insurance, posting of bond, or any combination thereof, must be included in an application for a permit to operate a hazardous waste facility. Section 10.7(3). Thus, in the case of a disposal site which is both a solid waste disposal area and a hazardous waste facility, it appears that a permit issued under the earlier statute would be superfluous. We cannot believe that the legislature in such circumstances intended that a disposal site operator apply for permits under both statutes. We believe, therefore, that the legislature intended that House Bill 318 supercede Section260.200 to 260.245, RSMo Supp. 1975, where both statutes would by their terms apply to a particular operation.
Where, as to a particular landfill (disposal site), regulation under the Solid Waste Management Law has been superceded by House Bill 318, it necessarily follows that the county's authority under the former statute is likewise superceded. Therefore, once a landfill operator acquires a hazardous waste facility permit under House Bill 318, we are of the opinion that a county court cannot license or otherwise regulate that landfill.
It is our view that a county court or county governing body may regulate a solid waste disposal area which is subject to the provisions of the Solid Waste Management Law, Sections 260.200 to260.245, and that a county may likewise regulate under the Solid Waste Management Law a landfill which is being used to dispose of special or hazardous wastes, unless and until the landfill becomes subject to regulation under House Bill 318, 79th General Assembly, First Regular Session. If, however, the landfill holds a permit under House Bill 318, the county governing body will be precluded from regulating the operation of such landfill.
Very truly yours,
 JOHN ASHCROFT Attorney General
Enclosure: Op. Ltr. No. 12 2/3/76, Boggs